```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------------------x
CITIZENS BANK,

                    Appellant,
                                                            Memorandum of
        -against-                                           Decision & Order
                                                            16-cv-1918 (ADS)
LORELEI DECENA,

                    Appellee.
----------------------------------------------------------------------------x
```

**APPEARANCES:**

**Weltman, Weinberg & Reis Co., L.P.A.**
*Attorneys for the Appellant*
3705 Marlane Dr.
Grove City, OH 43123
    By:    Geoffrey J. Peters, Esq., Of Counsel

**The Law Office of Darren Aronow, P.C.**
*Attorneys for the Appellee*
8B Commercial Street, Suite 1
Hicksville, NY 11801
    By:    Darren A. Aronow, Esq., Of Counsel

**SPATT, District Judge:**

On April 19, 2016, the Appellant Citizens Bank (the "Bank") commenced the present appeal from a Memorandum Decision (the "Underlying Decision") of the United States Bankruptcy Court for the Eastern District of New York (Grossman, *J.*). The Bank contended that, in an adversary proceeding, the Bankruptcy Court's entry of a default judgment against it, and in favor of the Appellee Lorelei de Cena (the "Debtor"), was reversible error.

For the reasons that follow, the Court agrees, and finds that good cause existed for the Bankruptcy Court to set aside the Clerk's entry of default against the Bank, as a matter of law. Accordingly, the Court respectfully reverses the Underlying Decision and remands this matter for further proceedings consistent with this opinion.

# I. BACKGROUND

The following facts are drawn from the April 4, 2016 Memorandum Decision of United States Bankruptcy Judge Robert E. Grossman (previously defined as the "Underlying Decision") and the parties' briefs. Unless otherwise noted, they are not in dispute.

In 2001, the Debtor applied for admission to an institution known as St. Christopher's College of Medicine ("St. Christopher's"). St. Christopher's is a Senegalese institution, with a campus located in the United Kingdom.

Upon her acceptance, in order to fund her studies, St. Christopher's provided the Debtor with a loan application from the Bank. Apparently, certain material portions of the loan application were pre-printed at the time the Debtor received it.

For example, the loan application identified St. Christopher's as the name of the educational institution for which the Debtor incurred the loan. The loan application also included a six-digit numerical school code, purportedly taken from the Federal School Codes List. The Federal School Codes List catalogues all postsecondary schools that are eligible for federal student aid. In order to receive a federal school code, educational institutions must undergo rigorous vetting by the Department of Education. For this reason, a loan will only qualify as a "student loan" for purposes of federal bankruptcy law if it is incurred in order to pursue an education at an institution featured on the Federal School Codes List.

According to the Debtor, the impression clearly given by the inclusion of this information on the loan application was that St. Christopher's was, in fact, an eligible educational institution in the eyes of the federal government.

In actuality, however, it is not, and the school code listed on the Bank's loan application belonged exclusively to Steinbeis Hoch Schulte, a school in Berlin that is totally unaffiliated with St. Christopher's. In fact, not only was St. Christopher's not included on the Federal School Codes List, but it was also neither licensed nor accredited as a postsecondary educational institution.

However, relying, at least in part, on the seeming legitimacy of St. Christopher's as conferred by the loan application and the institution's connection to the Bank, the Debtor applied for and received five separate loans from the Bank to fund her education (the "Debt").

Sadly, in June 2004, after completing a three-year course of study, the Debtor was not permitted to sit for the medical boards in the United States because St. Christopher's was not an accredited medical school.

## II. RELEVANT PROCEDURAL HISTORY

On July 7, 2015, the Debtor filed a voluntary petition for Chapter 7 relief. At the time of her filing, the outstanding balance due on the Debt was $161,591.19, the entirety of which she appropriately disclosed as a scheduled obligation to the Bank.

On August 11, 2015, the Chapter 7 Trustee filed a "report of no distribution," and on October 15, 2015, the Bankruptcy Court granted a discharge.

On October 13, 2015, by way of a summons and complaint, the Debtor commenced an adversary proceeding seeking to specifically declare the Debt at issue in this case to be discharged. It is undisputed that process was served upon the Bank by first-class mail at: 1 Citizens Plaza, Providence, RI 12903 Attn: Bruce Van Saun Chairman, CEO & President.

The Bank failed to answer or otherwise respond to the complaint, and on December 14, 2015, the Clerk of the Court noted the Bank's default.

On January 9, 2016, the Debtor filed an amended complaint, which, together with a supplemental summons, was served on the Bank in the same manner as the original complaint.

The Bank again failed to answer or otherwise respond to the amended complaint, and on February 22, 2016, the Clerk of the Court again noted the Bank's default.

On February 29, 2016, the Debtor filed a motion in the Bankruptcy Court for the entry of a default judgment against the Bank. The motion papers were served on the Bank in same manner as the original complaint and the amended complaint.

3

On March 21, 2016, the Bankruptcy Court held a hearing on the Debtor's motion for a default judgment. Despite having defaulted on both complaints; and despite all of the relevant submissions having been served in identical fashion, the Bank appeared by counsel in opposition to the motion, which counsel admitted having received from the Bank three days earlier, on March 18, 2016.

Of note, at the hearing, counsel did not deny that the Bank also received both of the Debtor's complaints. Instead, counsel argued only that the method of service had been improper. In particular, counsel referred to Federal Rule of Bankruptcy Procedure ("FED. R. BANKR. P.") 7004(h) for the proposition that, since the Bank is an insured depository institution, as that term is statutorily defined, service of process in an adversary proceeding must be made by certified mail. Thus, to the extent that the Debtor served notice of the action by first-class mail, the Bank contended that such service had been insufficient to confer personal jurisdiction, and therefore, the court could not enter a default judgment against it.

Counsel requested and was granted a 14-day extension of time for the Bank to respond to the Debtor's motion for a default judgment. In granting this extension, the Bankruptcy Court explicitly cautioned that if the Bank failed to respond within 14 days, the motion for a default judgment would be granted. *See* Transcript of Proceedings on Mar. 21, 2016 at 6:4-5 ("If the reply isn't put in within 14 days I'm going to grant this default judgment").

On April 1, 2016, namely, 11 days after the hearing, the Bank filed a written objection to the entry of a default judgment, together with an affidavit by Alisha McNally, a so-called Bankruptcy Specialist for the Bank. In her affidavit, Ms. McNally stated that the Bank had no record of receiving the Debtor's original complaint or amended complaint. Although Ms. McNally conceded that the Bank received a copy of the Debtor's motion for a default judgment and forwarded the matter to counsel within two days of receipt, she failed to specify when either of these events occurred.

Thus, in its April 1, 2016 filing, the Bank reiterated its objection to service by first-class mail; requested an additional 30 days to interpose an answer to the amended complaint; but failed to assert any substantive argument in defense to the Debtor's allegations.

On April 4, 2016, the Bankruptcy Court issued the Underlying Decision, denying the Bank's request for additional time to answer, and granting the Debtor's motion for a default judgment.

First, the Bankruptcy Court declined to set aside the Clerk's notice of default, finding that the Bank had failed to demonstrate "good cause" for such relief under FED. R. BANKR. P. 7055(c). In this regard, the Bankruptcy Court noted that the supplemental summons and amended complaint were served on the Bank via first-class mail on January 11, 2016; that the Debtor's motion for a default judgment was filed on February 29, 2016 and was served in the same manner as the pleadings; that the Bank admitted to having received the motion papers, and, thus, knowledge of the adversary proceeding, sometime between February 29, 2016 and March 18, 2016; and that, by April 4, 2016 – namely, 84 days after service of the amended complaint, and 17 days after admittedly receiving notice of the action – the Bank had failed to file an answer or otherwise assert any meritorious defense to the Debtor's allegations.

However, because the Bank's default, standing alone, did not entitle the Debtor to a default judgment, the Bankruptcy Court proceeded to consider whether the allegations in the amended complaint, accepted as true, established a basis for the relief sought – namely, whether the Debt in question could properly be discharged in bankruptcy.

In this regard, the court referred to Section 523(a)(8) of the Bankruptcy Code (the "Code"), which exempts from discharge certain categories of education-related debts. The court noted that it was the Debtor's burden to show that the Debt at issue in this case fell outside of the enumerated exemptions, and, therefore, was properly dischargeable.

Section 523(a)(8) of the Code provides, in relevant part, that, except in cases of undue hardship, a discharge in bankruptcy does *not* relieve a debtor of her responsibility for:

(A)
- (i) an educational benefit overpayment or loan made, insured, or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution; or
- (ii) an obligation to repay funds received as an educational benefit, scholarship, or stipend;

(B) any other educational loan that is a qualified education loan, as defined in section 221(d)(1) of the Internal Revenue Code of 1986 [26 U.S.C. § 221(d)(1)], incurred by a debtor who is an individual.

11 U.S.C. § 523(a)(8).

Applying this standard, and accepting as true the uncontested allegations in the amended complaint, the Bankruptcy Court found that the Debtor had sufficiently alleged that the loans at issue in this case were neither "made, insured, or guaranteed by a governmental unit" nor "made under a program funded in whole or in part by a governmental unit or nonprofit institution." Accordingly, the Court held that the Debtor had sustained her *prima facie* burden of establishing that the Debt did not come within the purview of Section 528(a)(8)(A)(i).

Further, because the terms "educational benefit" and "loan" are not used interchangeably in the statute, the Bankruptcy Court found that Section 523(a)(8)(A)(ii) referred exclusively to educational benefits which, like traditional scholarships and stipends, are not generally required to be repaid. Therefore, necessarily, Section 523(a)(8)(A)(ii) would not encompass loans, and the Debt in question would also not come within the purview of that provision.

Finally, because Section 523(a)(8)(B) only excepts from discharge loans used for attending "eligible educational institutions"; and because St. Christopher's does not meet this criteria, the Bankruptcy Court found that the Debt in question was also not encompassed by that provision.

In sum, the Bankruptcy Court determined that the Debt at issue in this case did not come within the purview of any of the categories of non-dischargeable education-related debts identified in Section 523(a)(8) of the Bankruptcy Code. Therefore, in light of the Bank's default, the amended complaint sufficiently established the Debtor's entitlement to the relief sought, namely, the discharge of the Debt.

On April 4, 2016, a judgment consistent with the Underlying Decision was entered.

On April 28, 2016, the Bank filed a Notice of Appeal.

### III. Discussion

#### A. The Standard of Review

This Court is vested with appellate jurisdiction over "final judgments, orders, and decrees" of the Bankruptcy Court. *See* 28 U.S.C. § 158(a); *see also* FED. R. BANKR. P. 8013; *KLG Gates LLP v. Brown*, 506 B.R. 177, 189 (E.D.N.Y. 2014) (Spatt, J.). Relevant here, the Bankruptcy Court's decision to grant a default judgment is "entitled to great deference," *In re Men's Sportswear, Inc.*, 834 F.2d 1134, 1138 (2d Cir. 1987), and, therefore, is reviewed for abuse of discretion, *see In re Suprema Specialties, Inc.*, 330 B.R. 40, 44–45 (S.D.N.Y. 2005) (citing *Pecarsky v. Galaxiworld.com Ltd.*, 249 F.3d 167, 171 (2d Cir. 2001)).

#### B. The Legal Framework for Evaluating a Motion for a Default Judgment

At the heart of this appeal is the Bankruptcy Court's decision to enter a default judgment against the Bank. Thus, the Court's discussion begins by reviewing the applicable legal standards under Federal Rule of Civil Procedure ("FED. R. CIV. P.") 55 and its analogue in bankruptcy law, namely, FED. R. BANKR. P. 7055.

As the Second Circuit has recognized:

> "Federal Rule of Civil Procedure 55 is the basic procedure to be followed when there is a default in the course of litigation." *Vt. Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 24, 246 (2d Cir. 2004). Rule 55 provides a 'two-step process' for the entry of judgment against a party who fails to defend: first, the entry of a default, and second, the entry of a default judgment. *New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005).
>> The first step, entry of a default, formalizes a judicial recognition that a defendant has, through its failure to defend the action, admitted liability to the plaintiff. The entry of default is governed by Rule 55(a), which provides:
>>> When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default.
>
> FED. R. CIV. P. 55(a). Although Rule 55(a) contemplates that entry of default is a ministerial step to be performed by the clerk of court, *see Pinaud v. Cnty. of Suffolk*, 52 F.3d 1139, 1152 n.11 (2d Cir. 2005) (describing "the entry of a default" as "largely a formal matter" (internal quotation marks omitted)), a district judge also possesses the inherent power to enter a default, *see Beller & Keller v. Tyler*, 120 F.3d 21, 22 n.1 (2d Cir. 1997). The entry of a default,

> while establishing liability, "is not an admission of damages." *Finkel v. Romanowicz*, 577 F.3d 79, 83 n.6 (2d Cir. 2009).
>
> The second step, entry of a default judgment, converts the defendant's admission of liability into a final judgment that terminates the litigation and awards the plaintiff any relief to which the court decides it is entitled, to the extent permitted by Rule 54(c). Under Rule 55(b), a default ordinarily must be entered by the district judge, rather than by the clerk of court, except in certain circumstances provided for by the rule and not present here. A district court is empowered under Rule 55(b)(2), in the exercise of its discretion, to "conduct hearings or make referrals" as may be necessary, *inter alia*, to determine the amount of damages or establish the truth of the plaintiff's allegations. FED. R. CIV. P. 55(b)(2)(B)-(C). "A default judgment is a final action by the district court in the litigation [and] one that may be appealed." *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 95 (2d Cir. 1993).

*City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 128-29 (2d Cir. 2011) (footnotes omitted).

Consistent with this standard, the Underlying Decision had two discrete components: first, acting on its own motion, the Bankruptcy Court declined to set aside the Clerk's notation of default, thus satisfying the first prong of the standard under Rule 55(a). Second, the Bankruptcy Court determined that the uncontested allegations in the amended complaint, taken as true, established a basis for relief under Section 523(a)(8) of the Code, thus satisfying the second prong of the standard under Rule 55(b).

In this appeal, the Bank contends that the Bankruptcy Court abused its discretion in both respects.

C.  **As to Whether the Bankruptcy Court Erred in Declining to Set Aside the Clerk's Entry of Default**

As noted above, FED. R. CIV. P. 55(a) directs the Clerk of the Court to enter the default of a party "against whom a judgment for affirmative relief is sought" when that party "has failed to plead or otherwise defend." However, where "good cause" for doing so exists, Rule 55(c) authorizes the Court, in its discretion, to set aside the Clerk's entry of default.

In this appeal, the Bank principally contends that the Debtor's failure to properly serve the adversary pleading by certified mail, as statutorily required, was ineffective at triggering any obligation on the part of the Bank to "plead or otherwise defend" the Debtor's allegations. Thus,

8

according to the Bank, no valid basis existed for the Clerk of the Court to note its default, and therefore, "good cause" existed for the Bankruptcy Court to set the default aside.

The Bank argues that the Bankruptcy Court's decision to let stand the Clerk's invalid entry of default, despite the ineffective service of process, constituted an abuse of discretion. The Court agrees.

Critically, the Debtor does not dispute that she served notice of the adversary proceeding on the Bank via first-class mail. Nor does she dispute that the Bank is, in fact, an "insured depository" under the law and thus entitled to receive such notice by certified mail.

In this regard, it is well-settled, and both parties apparently recognize that "a judgment obtained by way of defective service is void for lack of personal jurisdiction and must be set aside as a matter of law." *Chettri v. Nepal Bangl. Bank, Ltd.*, No. 10-cv-8470, 2014 U.S. Dist. LEXIS 122731, at *13 (S.D.N.Y. Sept. 2, 2014), *aff'd*, 2016 U.S. App. LEXIS 11070 (2d Cir. June 20, 2016); *see Dorrough v. Harbor Sec., LLC*, No. 99-cv-7589, 2002 U.S. Dist. LEXIS 13546, at *12-*13 (E.D.N.Y. May 10, 2002) (vacating as void a default judgment obtained against a party that was never properly served with process).

Therefore, in the Court's view, it is clear that the Debtor's ineffective method of serving the adversary pleading in this case constituted "good cause," as a matter of law, for vacating the Clerk's entry of default against the Bank. *See In re Schwartz*, 2008 U.S. Bankr. LEXIS 2695, at *12-*13 (Bankr. N.D. Ind. Aug. 15, 2008) (finding that defective service under Fed. R. Bankr. P. 7004(h) "constitutes good cause to set aside [the] entry of default upon [a] Bank" (citations omitted)); *In re Walker*, 2015 Bankr. LEXIS 546, at *3 (Bankr. N.D. Ga. Jan 14, 2015) (dismissing an adversary proceeding based on improper service; noting that "a party must strictly comply with Bankruptcy Rule 7004(h) in effectuating service of process on an insured depository institution").

In reaching this conclusion, the Court disagrees with the Debtor's argument that a recognized exception to the general rule found in Rule 7004(h) applies to excuse the improper service in this case. In particular, the Debtor relies on FED. R. BANKR. P. 7004(h)(1), which provides that:

> Service on an insured depository institution . . . in a contested matter or adversary proceeding shall be made by certified mail addressed to an officer of the institution *unless* . . . the institution has appeared by its attorney, in which case the attorney shall be served by first class mail . . .

(emphasis supplied).

The Debtor contends that this exception applies in this case to excuse the improper service because the Bank's attorney appeared at the March 21, 2016 hearing and was granted a two-week extension of time to respond to the motion for a default judgment. However, in the Court's view, the Debtor's reliance on this exception is misplaced.

The language and legislative history of Rule 7004(h)(1) make it clear that the impetus for imposing more stringent service requirements on insured depository institutions was a concern over the efficacy of sending important and time-sensitive legal documents to a bank via first-class mail.

For example, as one court has observed, in 1993, Senator Helms of North Carolina introduced the bill for the addition of FED. R. BANKR. P. 7004(h) by expressing his concerns that allowing "an individual or company filing bankruptcy" to serve process on a bank "by simply sending a letter by first class mail to a managing agent of the bank . . . automatically puts a bank at a disadvantage because, first, a legal document received in the large volume of regularly delivered mail received in a bank's many branches is much less likely than certified or registered mail to receive the necessary prompt attention; and second, the person at the bank to whom the letter is addressed often does not have sufficient authority to ensure a response within the time period required by the Bankruptcy Code." *See In re Gordon*, 2013 Bankr. LEXIS 1087, at *18-*19 n.10 (Bankr. D. Nev. Mar. 20, 2013) (quoting 139 CONG. REC. S707-08 (daily ed. January 26, 1993) (statement of Sen. Helms)); *accord In re*

*Schwartz*, 2008 U.S. Bankr. LEXIS 2695, at *5 ("Congress, recognizing a need to grant safeguards to federally insured banks that are named as defendants, added the requirements that service 'shall be made by certified mail' and shall be 'addressed to an officer of the institution' ").

However, these twin concerns – namely, (1) that the process will be lost in a sea of regularly delivered mail; and (2) that the process will be addressed to someone lacking the authority to properly handle it – are presumed to be eased, if not allayed altogether, when the institution's interests are protected by an attorney of record.

In such situations, the Bankruptcy Rules provide for a relaxed method of service, namely, first-class mail on the attorney. *See In re Miller*, 428 B.R. 791, 795 n.1 (Bankr. S.D. Oh. 2010) (noting that the relevant exception to service by certified mail applies where "an attorney for the institution has appeared in the case in which instance service by first class mail on the attorney will suffice"); *In re Gordon*, 2013 Bankr. LEXIS 1087, at *18-*19 (noting that Rule 7004(h) "requires that service be addressed to 'an officer of the institution' unless an attorney has appeared for the bank, and then service can be made by first class mail to the attorney"); *In re Baron*, No. 09-cv-6883, 2010 U.S. Dist. LEXIS 65495, at *14 (C.D. Cal. June 8, 2010) (noting that service by first-class mail is appropriate even when the institution's lawyer entered an appearance in the underlying bankruptcy case, rather than the specific adversary proceeding).

Thus, in the Court's view, it seems obvious that Rule 7004(h)(1) applies only to papers served *after* an attorney has appeared for the Bank, at which time "service by first class mail on the attorney will suffice" to satisfy the requirements of Rule 7004(h). *In re Miller*, 428 B.R. 791, 795 n.1 (Bankr. S.D. Oh. 2010); *see In re Tudor*, 282 B.R. 546, 550 (Bankr. S.D. Ga. 2002) ("Insured depository institutions are to be served by certified mail addressed to an officer of the institution unless the institution has *already* appeared by its attorney . . ." (emphasis supplied)).

Contrary to the Debtor's contention, the Court discerns no principled basis to conclude that this exception also applies in the reverse – that is, retroactively to excuse defective service simply because an attorney for the Bank, perhaps fortuitously, appeared in the adversary proceeding prior to the entry of a default judgment and collaterally attacked the Court's jurisdiction. On the contrary, in the Court's view, it seems that the more stringent service requirements applicable to insured depository institutions were implemented precisely to avoid situations like this one.

The Court also disagrees with the Debtor's argument that any error arising from the admittedly improper service was harmless because the Bank had actual knowledge of the adversary proceeding; appeared by counsel at the motion hearing; and was given a full and fair opportunity to oppose the entry of a default judgment.

This reasoning was largely adopted by the Bankruptcy Court in the Underlying Decision, in that it relied on the Bank's evident receipt of actual notice of the adversary proceeding as a basis for declining to set aside the Clerk's entry of default. *See* Underlying Decision at 5 (reasoning that, "despite having admitted knowledge of this adversary proceeding sometime between February 29, 2016 and March 16, 2016, [the Bank] still has not filed an answer or put forth any defense to the allegations of the Amended Complaint").

However, this Court respectfully disagrees.

As the Bank notes, FED. R. CIV. P. 55(a) only permits the entry of a default where a party "has failed to plead or otherwise defend." However, the Bank argues persuasively that, as a result of the Debtor's failure to properly serve the adversary pleading by certified mail, the Bank had no obligation to "plead or otherwise defend" the allegations. *See* FED. R. BANKR. P. 7012(a) (making the defendant's obligation to respond to an adversary complaint contingent on the complaint being "duly served"); *see also In re Mersmann*, 505 F.3d 1033, 1043 (10th Cir. 2007) ("The obligation to answer the adversary proceeding complaint is not triggered until the complaint is 'duly served.' Once duly served, the creditor-defendant has thirty days to file its answer and thirty-five days if the creditor is

the United States. Without proper service, the defendant cannot be said to have 'failed to plead or otherwise defend as provided by these rules" (internal citations omitted)).

Further, the emphasis that both the Bankruptcy Court and the Debtor appear to place on the Bank's actual knowledge of the adversary proceeding, notwithstanding the indisputably improper service, appears to be in conflict with caselaw holding that a defendant's actual knowledge of a pending lawsuit is no substitute for proper service. *See, e.g.*, *In re Crysen/Montenay Energy Co.*, 166 B.R. 546, 554 (S.D.N.Y. 1994) (affirming the bankruptcy court's dismissal of an adversary proceeding for failure to prosecute; noting that the appellee's actual knowledge of the proceeding was an insufficient basis to deny dismissal because "actual notice is no substitute for valid service of process" (citing cases)); *see also Bogle-Assegai v. Connecticut*, 470 F.3d 498, 507-09 (2d Cir. 2006) (affirming the district court's dismissal of a complaint based on improper service; rejecting the plaintiff's argument that the defendants had actual knowledge of her claims), *cert. denied*, 552 U.S. 1165, 128 S. Ct. 1121, 169 L. Ed. 2d 949 (2008); *SEC v. China Northeast Petroleum Holdings, Ltd.*, 27 F. Supp. 3d 379 (S.D.N.Y. 2014) (noting that "a defendant's 'actual knowledge is no substitute for service'" (quoting *S.E.C. v. Anticevic*, No. 05-cv-6991, 2009 U.S. Dist. LEXIS 11480, at *11 (S.D.N.Y. Feb. 13, 2009)); *Sullivan v. N.Y. State Dep't of Corr.*, No. 07-cv-6133, 2009 U.S. Dist. LEXIS 107454, at *19 (W.D.N.Y. Sept. 1, 2009) ("Even assuming *arguendo*, [the plaintiff's attorney] could show [the defendant] had knowledge of the suit, actual knowledge of the suit does not substitute for proper service under Rule 4"); *accord Leisure v. Ohio*, 12 F. App'x 320 (6th Cir. 2001) (noting that "actual knowledge of a law suit will not cure defective service of process"); *Higgins v. Hames*, No. 94-35284, 1995 U.S. App. LEXIS 1148 (9th Cir. 1995) (same).

In the absence of any citation to relevant authority in the Underlying Decision, the Court is unable to assess the legal sufficiency of the Bankruptcy Court's ultimate determination that the Bank's actual knowledge of the proceeding, coupled with its failure to interpose an answer or defend

the Debtor's substantive allegations, override the "Debtor's failure to serve the Amended Complaint by certified mail" as required by the statute. *See* Underlying Decision at 5.

Rather, on the present record, the Court finds that "a party must strictly comply with Bankruptcy Rule 7004(h) in effectuating service of process on an insured depository institution." *In re Walker*, 2015 Bankr. LEXIS 546, at *3. The Debtor failed to do so.

Accordingly, based on the parties' agreement that the Debtor failed to serve the Bank with the adversary pleadings in the manner prescribed by the Bankruptcy Rules, the Court finds that the Clerk's entry of default against the Bank was void, and good cause existed for the Bankruptcy Court to set aside the default, as a matter of law. *See United Sates v. Murphy*, No. 99-cv-1436, 2007 U.S. Dist. LEXIS 78020, at *5 (E.D.N.Y. Sept. 28, 2007) (noting, in the context of a motion to set aside an entry of default, that "if service was improper, the default judgment is void and must be vacated"); *see also Orix Fin. Servs. v. Phipps*, No. 91-cv-2523, 2009 U.S. Dist. LEXIS 71771, at *8 (S.D.N.Y. Aug. 14, 2009) (noting, in the context of a Rule 60(b) motion to vacate a judgment, that "if the underlying judgment is void, it is *per se* abuse of discretion for a district court to deny a movant's motion to vacate the judgment" (quoting *Centr. Vt. PSC v. Herbert*, 341 F.3d 186, 189 (2d Cir. 2003))).

Having so held, the Court need not reach the second component of the Bankruptcy Court's Rule 55 analysis, namely, whether the Bankruptcy Court erred in finding that the amended complaint established a sufficient legal basis for discharging the Debt in question. At this juncture, it suffices to say that, because the court erred in letting stand the Clerk's entry of default, it also erred in accepting the Debtor's pleading as uncontested, and her substantive allegations as true.

IV. CONCLUSION

Based on the foregoing, the Court respectfully reverses the Underlying Decision of the Bankruptcy Court; vacates the default judgment entered against the Bank; and remands this matter for further proceedings consistent with this opinion.

14

The Clerk of the Court is directed to close this case.

Dated: Central Islip, New York
November 29, 2016

/s/ *Arthur D. Spatt*
ARTHUR D. SPATT
United States District Judge